CC-98-251                                               - 1 -

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan G. Rodríguez y otros<br>    Querellantes-Recurridos<br><br>                   v.<br><br>Héctor R. Rivera y otros<br>    Querellados-Peticionarios | Certiorari<br><br>2001 TSPR 171<br><br>155 DPR _____ |

Número del Caso: CC-1998-976


Fecha: 12/diciembre/2001


Tribunal de Circuito de Apelaciones:
                          Circuito Regional I


Juez Ponente:
                          Hon. Angel González Román


Abogada de la Parte Peticionaria:
                          Lcda. Claribel Ortiz Rodríguez


Abogado de la Parte Recurrida:
                          Lcdo. Javier Rodríguez Velázquez



Materia: Reclamación de Salarios

        Este documento constituye un documento oficial del Tribunal
    Supremo que está sujeto a los cambios y correcciones del proceso
    de compilación y publicación oficial de las decisiones del
    Tribunal. Su distribución electrónica se hace como un servicio
    público a la comunidad.

TRIBUNAL SUPREMO DE PUERTO RICO

Juan G. Rodríguez y otros

Querellantes-Recurridos

   v.         CC-1998-976  Certiorari

Héctor R. Rivera y otros

  Querellados-Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 12 de diciembre de 2001.

Nos corresponde determinar si erró el Tribunal de Circuito de Apelaciones al resolver que procedía separar varias causas de acción instadas en una querella laboral para que unas fueran consideradas de forma sumaria al amparo de la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. secs. 3118 et seq., [en adelante, Ley Núm. 2], y otras de forma ordinaria. Asimismo, debemos resolver si incidió dicho foro apelativo al determinar que procedía anotar la rebeldía a los querellados en relación a la causa de acción que ordenó fuese tramitada de forma sumaria.

Resolvemos que procede tramitar todas las causas de acción instadas en la querella laboral de forma ordinaria y que, conforme a los hechos del presente caso, procede dejar sin efecto la anotación de rebeldía efectuada contra los querellados.

I

En 1998, Juan G. Rodríguez, Ramón Pimentel y Samuel Carrión, empleados gerenciales de la Autoridad Metropolitana de Autobuses [en adelante, A.M.A.], presentaron una querella contra ésta y contra Héctor R. Rivera, Fernando Pérez, Santos M. Delgado y Alfredo Lugo, oficiales de la A.M.A. Los querellantes reclamaron el pago de salarios a los que alegaron tener derecho y reclamaron indemnización por daños ocasionados por actos que, a su juicio, eran constitutivos de discrimen político. Todos los oficiales querellados fueron demandados tanto en su carácter personal como en su carácter oficial. Además, fueron demandadas sus respectivas sociedades legales de gananciales. Finalmente, los querellantes solicitaron tramitar el proceso al amparo del cauce sumario que provee la Ley Núm. 2.

Luego de emplazados, los querellados A.M.A., Héctor R. Rivera, Santos M. Delgado y Alfredo Lugo, comparecieron oportunamente al tribunal de instancia y solicitaron una prórroga para contestar la querella. Según surge del documento que presentaron con ese propósito en el tribunal de instancia, su comparecencia a dicho foro fue realizada en su carácter oficial.[1] Además, informaron al tribunal que habían solicitado representación legal al Secretario de Justicia, según lo contempla el Art. 12 de la Ley Núm. 104 de 29 de junio de 1955, (conocida como la "Ley

---

[1] El co-querellado Fernando Pérez solicitó una prórroga para contestar al tribunal en una solicitud independiente formulada por derecho propio.

de Reclamaciones y Demandas contra el Estado"), según fue incorporado por la Ley Núm. 9 de 26 de noviembre de 1975, 32 L.P.R.A. sec. 3085, [en adelante Ley Núm. 9], <u>para propósitos del trámite judicial que se seguiría contra ellos en su carácter personal</u>. El foro de instancia concedió la prórroga.

Eventualmente, los querellados --A.M.A., Rivera, Delgado y Lugo--, contestaron la reclamación en su carácter oficial dentro del término de prórroga concedido por el foro de instancia. En esa ocasión, solicitaron que la reclamación fuese tramitada de forma ordinaria, toda vez que, a su juicio, comprendía controversias de naturaleza compleja que sólo podrían ser adjudicadas cabalmente en un juicio ordinario.

Varios días después de formulada esta solicitud, los empleados querellantes solicitaron al foro de instancia que declarara y anotara la rebeldía a los querellados. Como fundamento para ello, adujeron que la prórroga fue concedida contra los querellados en su <u>carácter oficial</u> y no en su <u>carácter personal</u> y que por ello, debieron responder la querella en su <u>carácter personal</u> dentro del término original que establece la Ley Núm. 2.[2] En la alternativa, indicaron, además, que procedía anotarles la rebeldía en su carácter personal bajo los términos ordinarios.

Luego de varios trámites procesales, el tribunal de instancia denegó la solicitud de anotación de rebeldía. Decidió tramitar la querella por la vía ordinaria y concedió a los querellados un término adicional de 10 días para que contestaran la demanda en su carácter personal. Al respecto, el foro de instancia expresó lo siguiente:

---

[2] Asimismo, adujeron que el querellante Fernando Pérez solicitó y se le concedió una prórroga para contestar de veinte días y dicho término había vencido sin que compareciera al foro de instancia. No obstante, el señor Pérez no ha comparecido ante este Foro.

[...] la complejidad del caso amerita un amplio descubrimiento de prueba, máxime cuando existen alegaciones de discrimen por razones políticas alegadamente [sic] reflejadas en aumento de sueldo para algunos empleados militantes de cierto partido y denegados para los militantes del otro, así como las restantes prácticas discriminatorias alegadas en la demanda.

3. Denegamos la solicitud de anotación de rebeldía de los funcionarios en su carácter personal. Ante nuestro deber de armonizar los intereses de las partes y los diferentes estatutos en vigor, resulta imposible exigirle al Secretario de Justicia que realice una investigación responsable en el término provisto en la Ley [Núm.] 2 [...]. Apéndice de la Petición de certiorari, en las págs. 120-121.

No conformes con esta decisión, los querellantes acudieron al Tribunal de Circuito de Apelaciones, el cual revocó al tribunal de instancia. En síntesis, el foro apelativo resolvió que la reclamación salarial debía ser tramitada de forma sumaria y la reclamación por alegado discrimen político debía ser considerada en un proceso ordinario. Finalmente, dejó sin efecto la prórroga para contestar la querella que concedió el foro de instancia y ordenó la anotación de rebeldía contra los querellados en su carácter personal en relación a las reclamaciones salariales. En este sentido, el foro apelativo separó las reclamaciones para que fuesen tramitadas en dos procesos distintos, uno sumario y otro ordinario, y anotó la rebeldía de los querellados con relación al proceso que resolvió, debía ser resuelto de forma sumaria.

Una moción de reconsideración fue declarada No Ha Lugar. De esta determinación, los querellados A.M.A., Héctor R. Rivera, Santos M. Delgado y Alfredo Lugo acudieron ante esta Curia mediante recurso de certiorari en el que solicitaron que revocáramos al Tribunal de Circuito de Apelaciones y reinstaláramos la decisión del tribunal de instancia.

Luego de evaluar sus planteamientos, emitimos una resolución en la que instruimos a los querellantes a que en un término no mayor de veinte días mostraran causa por la cual no debíamos revocar la sentencia emitida

por el Tribunal de Circuito de Apelaciones "con excepción de la modificación hecha en dicha sentencia respecto a la causa de acción por discrimen".

Con la comparecencia de los querellados mediante el vehículo procesal de mostración de causa, resolvemos según lo intimado.


II

De entrada, es preciso aclarar que no nos encontramos ante una situación procesal cobijada por la norma de autolimitación judicial que establecimos en Dávila v. Antilles Shipping, Inc., res. 12 de febrero de 1999, 99 T.S.P.R. 12, 147 D.P.R.___ (1999), en términos de que las decisiones interlocutorias del Tribunal de Primera Instancia emitidas en procesos tramitados al amparo de la Ley Núm. 2, no son revisables, excepto cuando sean emitidas sin jurisdicción o cuando los fines de la justicia requieran la intervención del foro apelativo. Id.; Ruiz Rivas v. Colegio San Agustín, res. 5 de octubre de 2000; 2000 TSPR 147; 152 D.P.R___ (2000).

En primer lugar, la norma allí establecida tuvo efecto prospectivo en relación a todos los recursos presentados en el Tribunal de Circuito de Apelaciones o ante este Tribunal, a partir del 12 de febrero de 1999. El caso de autos fue presentado ante esta Curia el 3 de diciembre de 1998, y en el Tribunal de Circuito de Apelaciones en una fecha anterior a ésta, lo que excluye la aplicación de dicha norma. Ruiz Rivas v. Colegio San Agustín, supra.

En segundo lugar, aunque el presente caso haya sido tramitado inicialmente de forma sumaria, la decisión objeto de revisión consiste precisamente en continuar el trámite judicial de forma ordinaria. En este sentido, con dicha decisión cesó la aplicación de las disposiciones

procesales de la Ley Núm. 2 y, en consecuencia, la norma de autolimitación judicial establecida en Dávila v. Antilles Shipping, Inc., supra, se tornó, a su vez, inaplicable. Nótese que esta norma tiene como finalidad evitar que el trámite que establece la Ley Núm. 2 pierda su esencia sumaria. Resulta lógico, por lo tanto, que ante una decisión interlocutoria de los foros de instancia de encauzar una reclamación de índole laboral de forma ordinaria, la parte querellante tenga a su disposición los mecanismos de revisión que, en los casos apropiados, permitirían revertir el trámite judicial al proceso sumario.

Aclarado lo anterior, examinemos las controversias que tenemos ante nuestra consideración.

III

La correcta adjudicación de las controversias que plantea este caso, requiere que repasemos las normas establecidas por este Tribunal con relación al proceso sumario que establece la Ley Núm. 2, particularmente en el contexto de reclamaciones laborales complejas o que involucran varias causas de acción.

En Rivera Rivera v. Insular Wire Products, Corp., 140 D.P.R.912 (1996), nos expresamos en torno a la aplicabilidad y alcance del proceso sumario que establece la Ley Núm. 2 en el contexto de reclamaciones de índole laboral en las cuales existen causas de acción cuya resolución resulta compleja. Allí, en específico, reconocimos discreción a los tribunales de instancia para determinar si una querella presentada por un obrero debía ser tramitada por la vía ordinaria, aún cuando el obrero reclamante considerara conveniente tramitarla de forma sumaria. Destacamos que, para hacer esta determinación, los tribunales debían hacer "un justo balance entre los intereses del patrono y los del obrero querellante, a la luz de las circunstancias específicas de las

reclamaciones en la querella." Rivera Rivera v. Insular Wire Products, Corp., supra.

Al disponer de las controversias que presentaba el caso, resolvimos que:

> [e]l tribunal de instancia podrá, a la luz de los hechos que se le presenten y el desarrollo procesal del caso, dentro de su discreción, entre otras cosas, continuar ventilando la querella en su totalidad mediante el procedimiento sumario de la Ley Núm. 2; o, separar la causa de acción bajo la Ley Núm. 80 y ventilarla prioritariamente mediante el procedimiento sumario, posponiendo la consideración de las otras dos (2) causas de acción, bajo la Ley Núm. 100 y la Ley Núm. 45, y la determinación de si éstas se deben tramitar por la vía ordinaria o por el procedimiento sumario; o, establecer cualquier otro manejo del caso que sea consistente con lo aquí resuelto y propicie el cumplimiento de los propósitos de la legislación laboral y la norma cardinal procesal judicial de dispensar justicia de forma rápida y económica. Rivera Rivera v. Insular Wire, supra.

Tiempo después, en Marín Kuilán v. Teddy Díaz Fastening Systems, Inc., 142 D.P.R. 499 (1997), al interpretar la Ley Núm. 115 de 20 de diciembre de 1991, 29 L.P.R.A. secs. 194 et seq., en el contexto del procedimiento sumario bajo la Ley Núm. 2, reafirmamos lo resuelto en Rivera Rivera v. Insular Wire Products, Corp., supra. Ratificando nuestras expresiones en Rivera Rivera, destacamos que "el procedimiento sumario establecido por la Ley Núm. 2, supra, no es ni puede ser una carta en blanco para la concesión de remedios a obreros que no han justificado adecuadamente, mediante alegaciones o prueba, hechos que avalen su derecho a lo reclamado". Id.

Finalmente, instruimos al foro de instancia a que determinara si, conforme a lo resuelto en Rivera Rivera v. Insular Wire, supra, ciertas reclamaciones formuladas por la allí querellante al amparo de la Ley Núm. 115, debían ser dilucidadas bajo el proceso sumario que establece la Ley Núm. 2, o si debían ser resueltas bajo el proceso ordinario.

Por último, recientemente en <u>Berríos Heredia</u> v. <u>González</u>, res. 15 de junio de 2000; 2000 T.S.P.R. 87; 151 D.P.R.___ (2000), tuvimos la oportunidad de considerar si una reclamación por concepto de angustias mentales podía ser tramitada de forma sumaria. En esa ocasión reconocimos las dificultades procesales que pudiera originar la bifurcación de las reclamaciones laborales en un proceso sumario y otro ordinario. Siendo conscientes de ello, resolvimos que cuando una reclamación laboral instada bajo el proceso sumario que establece la Ley Núm. 2, planteara varias causas de acción, una o algunas de las cuales, según el criterio del juzgador, planteara controversias cuya resolución resultara particularmente compleja, todas las causas de acción incluidas en la querella debían ser tramitadas en un juicio ordinario. En esa ocasión nos expresamos en los siguientes términos:

> en aquellos procedimientos judiciales instados bajo leyes de índole laboral que, por su naturaleza particularmente compleja, como por ejemplo, cuando se reclama compensación por angustias mentales, y que, a la luz de los criterios enumerados previamente, su correcta adjudicación requiera que alguna de las reclamaciones sea adjudicada de forma ordinaria, todas las reclamaciones incluidas con ella pueden ser sustraídas del proceso sumario y ser resueltas de forma ordinaria. No obstante, cuando el tribunal opte por este curso de acción, deberá simultáneamente tomar las medidas correspondientes para que la acción o acciones incoadas se incluyan en un calendario especial para que sean atendidas con carácter prioritario. Así evitamos que la conversión del proceso perjudique el interés del obrero de que se haga una adjudicación rápida de su reclamación.

Conforme a la discusión precedente, examinemos los hechos del caso.

IV

A la luz de la orden de mostrar causa que emitimos en el caso de autos, nuestra jurisdicción apelativa la ejercemos <u>con el único propósito</u> de examinar si las causas de acción relacionadas con las reclamaciones salariales formuladas por lo querellantes deben ser tramitadas de forma sumaria, según lo resuelto por el foro apelativo. En este sentido,

resolvimos no intervenir con lo resuelto por el Tribunal de Circuito de Apelaciones en torno a que la reclamación por alegado discrimen político debía ser encauzada de forma ordinaria.

Al declinar intervenir con lo resuelto sobre este aspecto por el foro apelativo, lo hicimos conscientes de  que tal proceder era consecuente con nuestros pronunciamientos en torno a la deseabilidad de tramitar de forma ordinaria aquellas reclamaciones de índole laboral que presentan controversias particularmente complejas, para las cuales el trámite sumario que establece la Ley Núm. 2 pudiera originar perjuicio para alguna de las partes, y más aún, para la consecución de los fines de la justicia. Rivera v. Insular Wire, supra. A la luz de las alegaciones de la querella que origina el presente caso, la tramitación de la reclamación por alegado discrimen político de forma ordinaria representaba el mejor curso de acción. Por lo tanto, al emitir la orden de mostrar causa coincidimos con el criterio del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones al respecto.

A tenor con lo anterior, nuestra jurisdicción apelativa la ejercemos exclusivamente para revisar la sentencia emitida por el Tribunal de Circuito de Apelaciones en aquella parte que resolvió que las reclamaciones salariales fueran tramitadas de forma sumaria y que resolvió dejar sin efecto la prórroga concedida a los querellados para contestar la querella en su carácter personal, y por ende, anotarles la rebeldía.

Una vez aclarado el alcance de nuestra intervención en el caso de autos, resulta forzoso concluir que lo resuelto recientemente por este Tribunal en el caso Berríos Heredia v. González, supra, dispone de la controversia respecto a si procede tramitar las reclamaciones salariales

de forma sumaria y de forma independiente a la reclamación por discrimen político.

Como expresamos antes, en <u>Berríos Heredia</u> resolvimos que cuando alguna reclamación contenida en una querella de índole laboral que contiene múltiples causas de acción deba ser tramitada de forma ordinaria a la luz de los parámetros allí establecidos, las demás reclamaciones formuladas en dicha querella debían ser sustraídas del trámite sumario, de forma tal que todas sean adjudicadas en un proceso ordinario.

En el presente caso, conforme a la norma expuesta, la determinación de los tribunales de instancia y apelativo, sostenida por nosotros en ocasión de nuestra orden de mostrar causa, en torno a que la reclamación por discrimen político debía ser tramitada de forma ordinaria, tiene como efecto que las reclamaciones salariales del caso de autos también sean sustraídas del proceso sumario y adjudicadas en un juicio ordinario. En consecuencia, procede revocar la sentencia del foro apelativo en aquella parte que resolvió lo contrario.

Resta, sin embargo, examinar la corrección de la sentencia del Tribunal de Circuito de Apelaciones en torno a si procedía anotar la rebeldía contra los funcionarios querellados en su carácter personal.

V

A

La querella de autos fue instada contra la A.M.A., y sus oficiales Héctor R. Rivera, Santos M. Delgado y Alfredo Lugo, quienes fueron demandados tanto en su carácter personal como oficial. Tanto la A.M.A. como los coquerellados Rivera, Delgado y Lugo solicitaron oportunamente una prórroga para contestar la querella.

El tribunal de instancia concedió la prórroga y eventualmente los coquerellados A.M.A., Rivera, Delgado y Lugo contestaron la querella.

Su comparecencia con ese propósito fue hecha en su carácter oficial. En esa ocasión, además, los querellados informaron al foro de instancia que estaban realizando las gestiones para solicitar la representación del Secretario de Justicia para propósitos de la reclamación formulada contra ellos en su carácter personal, conforme lo establecido en la Ley Núm. 9, y solicitaron que el proceso fuese tramitado de forma ordinaria. Apéndice de la Petición de Certiorari, en la pág. 100.

Posterior a ello, los querellantes solicitaron se anotara la rebeldía a los coquerellados bajo el fundamento de que no habían contestado la querella en su carácter personal dentro del término que establecía la Ley Núm. 2. Sostuvieron que la prórroga concedida por el tribunal de instancia lo fue exclusivamente para la comparecencia de los querellados en su carácter oficial y no en su carácter personal. Apéndice de la Petición de Certiorari, en la pág. 108. Días más tarde, el Secretario de Justicia concede a los querellados la representación legal solicitada.

B

En los procesos ordinarios, la figura de la rebeldía está regulada en la Regla 45 de las de Procedimiento Civil. 32 L.P.R.A. R. 45, Ap. III. Ha sido definida como "la posición procesal en que se coloca la parte que ha dejado de cumplir un deber procesal o de ejercitar su derecho de defenderse". Rafael Hernández Colón, Práctica jurídica de Puerto Rico 215 (1999).

En el contexto específico de querellas de índole laboral tramitadas sumariamente, la sección 4 de la Ley Núm. 2 dispone:

> Si el querellado no radicara su contestación a la querella en la forma y el término dispuesto en la sec. 3120 de este título, el juez dictará sentencia contra el querellado, a instancias del querellante, concediendo el remedio solicitado.

Como puede apreciarse, la propia Ley Núm. 2 dispone el efecto que tendrá el incumplimiento con los términos para contestar una querella. En específico, "exige que el tribunal conceda el remedio solicitado por la parte querellante, a menos que dentro de dicho término la parte querellada presente una solicitud de prórroga juramentada en la que exponga los hechos que la justifican". Ruiz Rivas v. Colegio San Agustín, supra; Valentín v. Housing, res. el 9 de octubre de 1998, 98 TSPR 129; 146 D.P.R___ (1998); véase, Mercado Cintrón v. Zeta Communications, Inc., res. el 7 de abril de 1994, 135 D.P.R. 737 (1994).

Nuestro examen de los hechos del caso nos convence de que la anotación de rebeldía contra los querellados en el caso de autos es improcedente.

El hecho de que todas las causas de acción incluidas en la querella laboral deban ser tramitadas de forma ordinaria, como acabamos de resolver, implica que los términos aplicables al proceso judicial de autos son los establecidos en las Reglas de Procedimiento Civil. Los términos más cortos que establece la Ley Núm. 2, en los cuales el foro apelativo basó su decisión, resultan, en consecuencia, inaplicables para hacer una determinación en torno a si se les debe anotar la rebeldía a los querellados, al menos en las etapas posteriores a la conversión del proceso al trámite ordinario. Dicho lo anterior, resolvemos que no existe razón por lo cual deba ser anotada la rebeldía a los querellados, ni bajo una evaluación procesal a la luz de los términos de naturaleza ordinaria, ni bajo los términos de carácter sumario.

En primer lugar, hubo una oportuna comparecencia inicial de los querellados para solicitar una prórroga para contestar la querella. Esta solicitud fue hecha conforme a los términos de la Ley Núm. 2. La prórroga fue concedida y eventualmente, los querellados contestaron la querella

en su carácter oficial dentro del término de la prórroga. Su comparencia en su carácter oficial, pues, no fue tardía o a destiempo. El propio querellante lo reconoce, toda vez que solicita la anotación de rebeldía exclusivamente para propósitos de la comparecencia personal. Nada expresa con relación a la comparecencia de los querellados en su carácter oficial.[3]

En segundo lugar, no podemos soslayar el hecho de que en su comparecencia oficial los querellados notificaron al foro de instancia que habían solicitado la representación legal del Secretario de Justicia para propósitos de la reclamación instada contra ellos en su carácter personal y específicamente  advirtieron al tribunal que completar dicho trámite "requiere un término en exceso de lo dispuesto en la Ley Núm. 2 [...]". Apéndice de la Petición de Certiorari, en la pág. 91.

Como se sabe, la obtención de la representación legal del Secretario de Justicia requiere cumplir con las disposiciones estatutarias y reglamentarias aplicables. Véase, García v. E.L.A., res 13 de octubre de 1998, 98 T.S.P.R. 131, 146 D.P.R.___ (1998). El tiempo requerido para ello pudiera muy bien exceder los términos existentes para contestar una querella, tanto bajo las Reglas de Procedimiento Civil como al amparo de la Ley Núm. 2. De hecho, conforme a la Ley Núm. 9, supra, el Secretario de Justicia tiene hasta treinta (30) días para notificar una decisión respecto a una solicitud de representación legal por parte de una persona demandada. 32 L.P.R.A. sec. 3087. Ante ello, la aplicación estricta de los términos ordinarios o los sumarios de la Ley Núm. 2, para propósitos de la anotación de rebeldía de un funcionario público que ha decidido

---

[3] Nuestros pronunciamientos toman en consideración exclusivamente el trámite procesal seguido por los coquerellados A.M.A., Rivera, Delgado y Lugo. Como señalamos antes, el coquerellado Fernando Pérez, no fue parte en el presente recurso de certiorari.

acogerse a los beneficios que provee la Ley Núm. 9, luego de que ha comparecido al tribunal oportunamente en su carácter oficial, no puede ser refrendada por este Tribunal. La posibilidad que el ordenamiento jurídico reconoce a un funcionario público de obtener representación legal del Secretario de Justicia y de que el Estado satisfaga la indemnización que en su día una parte demandada deba pagar no puede ser menoscabada por una interpretación rígida de los trámites procesales ordinarios o los sumarios de la Ley Núm. 2. Corresponde a los tribunales atemperar los intereses involucrados en ambos estatutos de forma tal que se salvaguarden los derechos de las partes.

A la luz de todo lo anterior, se expide el auto solicitado y se dicta Sentencia dejando sin efecto la anotación de rebeldía ordenada por el Tribunal de Circuito de Apelaciones en el caso Juan G. Rodríguez y otros v. Héctor R. Rivera y otros, Civil Núm. KLCE9800852.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón emitió Opinión Disidente. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Juan. G. Rodríguez y otros

     Recurridos


        v.

                          CC-1998-976

Héctor R. Rivera y otros

     Peticionarios


**Opinión disidente emitida por la Juez Asociada señora NAVEIRA DE RODÓN**


        **San Juan, Puerto Rico, a 12 de diciembre de 2001**


        **El recurso de epígrafe plantea la delicada cuestión sobre si, una vez un tribunal determina que una acción laboral en daños y perjuicios por discrimen político planteada dentro de un pleito de reclamación de salarios debe ser tramitada por la vía ordinaria, es** compulsorio **que las demás reclamaciones de índole propiamente laboral incluidas en la acción también se ventilen por la vía ordinaria, o si éstas pueden tramitarse por el procedimiento sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. § 3118 *et seq* (en adelante Ley 2).**

Por entender que los tribunales tienen discreción para separar la acción laboral de daños y perjuicios de la reclamación laboral propiamente, de manera que la primera se ventile por la vía ordinaria y la segunda se tramite sumariamente al amparo de la Ley 2, y entender además que la mayoría de este Tribunal ha aplicado e interpretado incorrectamente el alcance de nuestros pronunciamientos en <u>Berríos</u> v. <u>González et al</u>, res. el 15 de junio de 2000, 151 D.P.R. ___ (2000), 2000 T.S.P.R. 87, 2000 JTS 102, disentimos.

I

Este caso comenzó con una querella radicada por los señores Juan G. Rodríguez, Ramón Pimentel y Samuel Carrión (en adelante querellantes o recurridos), todos ellos empleados gerenciales de la Autoridad Metropolitana de Autobuses (en adelante AMA), contra la AMA, y los señores Héctor R. Rivera,[4] Santos M. Delgado[5], Alfredo Lugo[6] y Fernando Pérez[7] (en adelante querellados o peticionarios). Éstos fueron demandados en su carácter oficial y en su carácter personal.

La querella se presentó el 22 de abril de 1998 al amparo del procedimiento sumario establecido en la Ley 2. Los querellantes alegaron no haber recibido aumento de sueldo durante los siete (7) años anteriores a la presentación de la querella, en violación a la Ley de Retribución Uniforme, Ley Núm. 89 de 12 de julio de 1979, 3 L.P.R.A. § 760(a) *et seq,* (en adelante Ley 89 o Ley de Retribución Uniforme), y que no habían recibido paga por trabajo realizado durante el periodo de tomar alimentos, en violación a la Ley sobre la Jornada de Trabajo en Puerto Rico, Ley Núm. 379 de 15 de mayo de 1948, según enmendada, 29 L.P.R.A. § 271 *et seq* (en adelante Ley 379).

---

[4]    Presidente y gerente general de la AMA

[5]    Vice-presidente de Área, Programación y Servicio de la AMA

[6]    Director de Relaciones Industriales

[7]    Ayudante del Presidente

Los querellantes también adujeron que no se les había aumentado el sueldo ni se les había ascendido de puesto en la AMA debido a que su afiliación política era distinta a la de los querellados, mientras que otros empleados gerenciales, identificados con la afiliación política de la autoridad nominadora, sí habían recibido ascensos y aumentos de sueldo durante ese periodo.  Alegaron que estas acciones constituyeron discrimen por ideas políticas, en violación a la Constitución del Estado Libre Asociado de Puerto Rico y la Ley Anti-Discrimen, Ley Núm 100 de 30 de junio de 1959, 29 L.P.R.A. § 146 *et seq,* y les causaron a los querellantes daños, sufrimientos y angustias mentales por la cantidad de $100,000.

Todos los querellados, con excepción del Sr. Fernando Pérez, solicitaron bajo juramento al tribunal, el 28 de abril de 1998, una prórroga de 30 días para contestar la querella.  En la solicitud hicieron constar que estaban compareciendo en su carácter oficial, y que, en cuanto a la reclamación en su carácter personal, habían solicitado la representación legal del Secretario de Justicia, de acuerdo con la Ley Núm. 9 de 26 de noviembre de 1975, 32 L.P.R.A. § 3085 *et seq* (en adelante Ley 9).  La prórroga les fue concedida el 5 de mayo de 1998.

Por su parte, el Sr. Fernando Pérez compareció, por derecho propio, el 8 de mayo de 1998, mediante escrito titulado "Comparecencia especial y solicitud de prórroga".  En dicho escrito solicitó bajo juramento una prórroga de 20 días para contestar la querella.  Señaló además que había solicitado representación del Secretario de Justicia al amparo de la Ley 9 y que, a la fecha de su comparecencia ante el tribunal, no había recibido contestación del Departamento de Justicia.  El 13 de mayo de 1998, el tribunal le concedió la prórroga solicitada, advirtiéndole que antes de vencerse la misma, debía informar al tribunal y si fuese necesario, solicitar otra prórroga bajo juramento.

Así las cosas, el 2 de junio de 1998 la AMA y los demás querellados, con excepción del Sr. Fernando Pérez, contestaron la querella.  En su contestación negaron la mayor parte de las alegaciones de los querellantes, incluyendo los daños alegados.  Señalaron además que la Ley

2 no era de aplicación al caso, y que por tratarse de una reclamación compleja, ésta debía tramitarse bajo las normas del procedimiento civil ordinario, y no bajo el trámite sumario establecido en la Ley 2. En consecuencia, solicitaron al tribunal que declarase no ha lugar la querella y ordenase la tramitación del caso por la vía ordinaria.

Por su parte, el 8 de junio de 1998, los querellantes solicitaron que se anotara la rebeldía contra el Sr. Fernando Pérez, por éste haber solicitado prórroga fuera del término de 10 días que establece la Ley 2 para contestar la querella o solicitar una prórroga, y por no haber comparecido ante el tribunal dentro de la prórroga de 20 días que el Tribunal le concedió. Los querellantes también solicitaron que se anotara la rebeldía a los demás querellados en su carácter personal, por éstos no haber contestado la querella en dicho carácter dentro del término de 10 días establecido en la Ley 2.

Luego de varios trámites procesales, el 2 de julio de 1998, el tribunal de instancia emitió una resolución en la cual declaró con lugar la solicitud de los querellados de tramitar el caso por la vía ordinaria, debido a que "la complejidad del caso amerita un amplio descubrimiento de prueba, máxime cuando existen alegaciones de discrimen por razones políticas".[8] Además, el tribunal se negó a anotar la rebeldía a los querellados en su carácter personal, y les concedió a éstos un término adicional de 10 días para contestar la demanda.[9]

De esta determinación, los querellantes presentaron recurso de certiorari ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). Dicho foro determinó que la reclamación laboral en daños por discrimen político debía ser tramitada por la vía ordinaria. No obstante, con respecto a las reclamaciones de salarios bajos las Leyes 89 y 379, concluyó que éstas debían tramitarse mediante el procedimiento

---

[8]   Resolución y orden, pág. 1, inciso 2.

[9]   Todos los querellados, incluyendo al Sr. Fernando Pérez, contestaron la demanda en su carácter personal el 6 de julio de 1998.

sumario de la Ley 2.  Por último, determinó que procedía anotar la rebeldía a todos los querellados en su carácter personal.

Los querellados radicaron moción de reconsideración, la cual fue denegada.  Inconformes, la AMA y los señores Héctor R. Rivera, Santos M. Delgado y Alfredo Lugo recurrieron ante nos mediante recurso de certiorari.[10]  Alegaron, en síntesis, que el Tribunal de Circuito erró al determinar que la reclamación laboral debía tramitarse bajo la Ley 2, y al ordenar la anotación de rebeldía a los querellados en su carácter personal.

El 12 de febrero de 1999, dictamos una orden dirigida a los querellantes-recurridos, para que mostraran causa por la cual no debía revocarse la sentencia recurrida con excepción de la determinación hecha en dicha sentencia respecto a que la causa de acción por discrimen se tramitara por la vía ordinaria.  Oportunamente éstos comparecieron, y estando en posición de resolver, el Tribunal procedió a así hacerlo.  La mayoría determinó que todas las reclamaciones de la querella debían tramitarse por la vía ordinaria, incluyendo aquéllas que son de carácter exclusivamente laboral por concepto de salarios dejados de percibir.  Consideramos que este curso de acción está en contra de las disposiciones de la Ley 2 y su jurisprudencia interpretativa, por lo cual disentimos.

II

La Ley 2 establece un procedimiento de carácter sumario para los casos en que "un obrero o empleado tuviere que reclamar de su patrono cualquier derecho o beneficio, o cualquier suma por concepto de compensación por trabajo o labor realizados para dicho patrono, o por compensación en caso de que dicho obrero o empleado hubiere sido despedido de su empleo sin justa causa...".  32 L.P.R.A. § 3118.  Esta ley "provee un mecanismo procesal sumario mediante el cual se persigue lograr la rápida consideración y adjudicación de querellas presentadas por empleados u obreros contra sus

---

[10]    El Sr. Fernando Pérez no fue parte del recurso presentado ante este Tribunal.

patronos." Rivera v. Insular Wire Products Corp., 140 D.P.R. 912, 921 (1996); Rodríguez v. Syntex P.R., Inc., res. el 21 de junio de 1999, 148 D.P.R. ____ (1999), 99 T.S.P.R. 97, 99 JTS 99, 1197.

Al resolver controversias en relación con la Ley 2, siempre hemos tomado en consideración los objetivos del procedimiento sumario en ella dispuesto. Hemos indicado que "la naturaleza de este tipo de reclamación exige celeridad en su trámite para así alcanzar los propósitos legislativos de proteger el empleo, desalentar el despido sin justa causa y proveer al obrero así despedido recursos económicos entre un empleo y otro." Rodríguez v. Syntex P.R., Inc., supra, 1197. Reiteradamente hemos expresado que "[l]a esencia y médula del trámite fijado para casos sobre reclamaciones de salarios consagrado en la Ley Núm. 2 constituye el procesamiento sumario y su rápida disposición. Desprovisto de esta característica, resulta un procedimiento ordinario más...". Díaz v. Hotel Miramar Corp., 103 D.P.R. 314, 316 (1975); Mercado Cintrón v. Zeta Com., Inc., 135 D.P.R. 737, 742 (1994); Srio. del Trabajo v. J.C. Penney Co., Inc., 119 D.P.R. 660, 665 (1987); Rodríguez v. Syntex P.R., Inc., supra, 1197.

Como vemos, este Tribunal ha sido enfático respecto a la importancia de fortalecer el carácter sumario de las reclamaciones laborales al amparo de la Ley 2, de manera que el obrero o empleado pueda tramitar con celeridad su reclamación de salarios y ver así vindicados sus derechos. Es por esta razón que, de acuerdo con la ley, hemos sido estrictos al exigir el cumplimiento específico con los términos expeditos establecidos en ésta. Así, resolvimos en Díaz v. Hotel Miramar Corp., supra, que los tribunales no tienen jurisdicción para considerar una solicitud de prórroga radicada tardíamente, y que no es necesario el requisito de notificación previa para dictar sentencia en rebeldía cuando una parte no ha contestado la querella dentro de los términos establecidos en la Ley 2. También hemos validado la exigencia de que el patrono presente todas las defensas afirmativas que tenga en una sola alegación responsiva, para así evitar "que el patrono dilate innecesaria y viciosamente los procedimientos". Srio. del Trabajo v. JCPeneny Co., Inc., supra, pág. 670. Además determinamos que las

decisiones interlocutorias de los tribunales de instancia en casos que se ventilan bajo la Ley 2 no son revisables excepto cuando éstas sean dictadas sin jurisdicción o cuando los fines de la justicia lo requieran. Dávila v. Antilles Shipping, Inc., res. el 12 de febrero de 1999, 147 D.P.R. (1999), 99 T.S.P.R. 12, 99 JTS 10.[11]

Sin embargo, el patrono no está desprovisto de remedios bajo la Ley 2. Una vez más reiteramos que el procedimiento sumario, "no es, ni puede ser, una carta en blanco para la concesión de remedios a obreros que no han justificado adecuadamente, mediante alegaciones o prueba, hechos que avalen su derecho a lo reclamado". Díaz v. Hotel Miramar Corp., supra, pág, 324; Rivera v. Insular Wire Corp., supra, pág. 928. Lo verdaderamente fundamental en estos casos es salvaguardar, en la medida de lo posible, el carácter sumario del procedimiento de reclamación laboral, sin perder de vista que el trámite sumario fue diseñado para favorecer más al obrero que al patrono, en razón de la inequidad económica entre éstos, pero sin privar al patrono de su derecho a defenderse adecuadamente. Véase Rivera v. Insular Wire Corp.,supra, págs. 922-923.

Por otra parte, también hemos resuelto que existen ciertas reclamaciones laborales que, por su naturaleza compleja, deben tramitarse por la vía ordinaria. En Hernández v. Espinosa, res. el 3 de abril de 1998, 145 D.P.R. ___ (1998), 98 T.S.P.R. 40, 98 JTS 41, nota 23, resolvimos que el tribunal "al confrontarse con una demanda en la que se han incluido varias reclamaciones al amparo de distintas leyes laborales, [puede] separarlas, y resolver algunas por el procedimiento sumario de la Ley Núm. 2, supra, como por ejemplo, la reclamación bajo la Ley Núm. 80, mientras continúa con las otras, que pueden ser más complicadas, por la vía ordinaria". En este sentido, expresamos que:

> [L]os tribunales, al confrontarse con querellas o demandas con causas de acción y partes múltiples, tienen amplia discreción sobre el manejo del caso con el propósito de lograr la resolución de éste

---

[11] Como bien señala la opinión mayoritaria, esta norma no es aplicable al caso de autos, ya que el recurso de certiorari que nos ocupa fue presentado el 3 de diciembre de 1998, y la norma de Dávila, adoptada con carácter prospectivo, es aplicable a recursos de certiorari radicados a partir del 12 de febrero de 1999.

de la forma más justa, rápida y económica posible. Pueden **separar causas de acción o controversias**, consolidar trámites, determinar a la luz de las circunstancias de cada caso, si se trata de controversias sencillas que cualifican para verse por un trámite sumario especial o si se trata de casos complicados o complejos que deben proceder por la vía ordinaria y hasta de ser objeto de un manejo especial. Rivera v. Insular Wire Products Corp., supra, pág. 929; Piñero v. A.A.A., res. el 23 de octubre de 1998, 146 D.P.R. (1998), 98 T.S.P.R. 141, 98 JTS 140, a la pág. 215.

Como vemos, en el ejercicio de su discreción, el tribunal tiene facultad para separar reclamaciones hechas bajo varias leyes laborales, de acuerdo a su complejidad, de manera que unas se tramiten mediante la vía ordinaria y otras, bajo el procedimiento sumario.

Ahora bien, en Berríos v. González et al, supra, por primera vez tuvimos la oportunidad de examinar si procedía o no excluir del trámite sumario una reclamación de daños y perjuicios por angustias mentales que formaba parte de un pleito de reclamación de salarios instado bajo la Ley 2. Allí resolvimos que, como de ordinario, una reclamación por angustias mentales requiere un amplio descubrimiento prueba, tanto para establecer los méritos de la reclamación como para poder defenderse adecuadamente de ésta, los tribunales tenían discreción para decidir si dicha reclamación se tramitaba bajo la Ley 2 o si por el contrario, debía verse por la vía ordinaria.

En ese caso expresamos que "una determinación de que una querella laboral que contiene una reclamación por concepto de angustias mentales no puede ser adjudicada por la vía sumaria, **de ordinario**, hace necesario que las demás reclamaciones formuladas en la querella también sean sustraídas del procedimiento sumario...." Berríos v. González et al, supra, pág 1301 Este lenguaje parece indicar que una vez se hace la determinación de que la reclamación en daños por angustias mentales se tramitará por la vía ordinaria, las reclamaciones laborales también deben ser sustraídas del trámite sumario.

No obstante, nuestra conclusión específica en ese caso fue que:

[E]n aquellos procedimientos judiciales instados bajo leyes de índole laboral que, por su naturaleza particularmente compleja, como por ejemplo, cuando se reclama compensación por angustias mentales, y que... su correcta adjudicación requiera que alguna de las reclamaciones sea adjudicada de forma ordinaria, todas las reclamaciones incluidas con ella **pueden** ser sustraídas del proceso

sumario y ser resueltas de forma ordinaria.  <u>Berríos</u> v. <u>González et al</u>, <u>supra</u>, pág 1301.

Nuestros pronunciamientos en <u>Berríos</u> no tienen el alcance que la mayoría pretende darles.  A la luz de este caso, el tribunal **<u>tiene discreción</u>** para separar la causa de acción por angustias mentales de la reclamación salarial, y tramitarla por la vía ordinaria.  **Esto no significa que sea obligatorio que al separar la acción laboral en daños para tramitarla por la vía ordinaria, automáticamente la reclamación laboral propiamente tenga que verse bajo las normas del procedimiento civil ordinario.  El tribunal puede <u>separar</u> la causa de acción laboral en daños de la reclamación laboral propiamente, sin que venga obligado a <u>remover</u> la reclamación laboral propiamente de un procedimiento a otro.**

El efecto práctico de la interpretación de la mayoría, a los efectos de que <u>Berríos</u> hace obligatorio que la reclamación laboral se tramite por la vía ordinaria una vez se determina que la acción en daños y perjuicios incluida en la reclamación debe verse mediante el trámite ordinario, será que cuando el obrero tenga una reclamación laboral bona fide, y además, una causa de acción en daños por angustias mentales, la reclamación laboral no podrá tramitarse bajo el procedimiento sumario, a pesar de las graves necesidades económicas que pueda tener el obrero, ya que, como regla general, las acciones en daños son complejas, requieren un amplio descubrimiento de prueba y por ende, tardan más.  Este resultado no es compatible con el propósito de la Ley 2 y la interpretación que este Tribunal consistentemente ha hecho de la misma.

Nada impide que los tribunales, en el ejercicio de su discreción, tramiten las reclamaciones de laborales propiamente bajo la Ley 2, y la acción laboral en daños bajo las reglas del procedimiento civil ordinario. No podemos perder de vista que **la reclamación laboral propiamente no deja de serlo porque la querella incluya una acción en daños y perjuicios que surja bajo alguna ley laboral.**  Si bien es cierto que, como muy bien indicamos en <u>Berríos</u>, tramitar una reclamación por la vía ordinaria y otra por la vía sumaria podría implicar una duplicación de procedimientos, y

además ser desventajoso para el patrono por éste tener que comparecer y defenderse en dos procedimientos distintos, no es menos cierto que estas desventajas son considerablemente menores en relación con las implicaciones que tiene para el obrero la interpretación que hace la mayoría en este caso.

Para todos los efectos, si el obrero tiene contra su patrono una reclamación laboral propiamente, como por ejemplo, una en concepto de salarios dejados de percibir, y además una reclamación en daños y perjuicios por angustias mentales que surja bajo una ley laboral, y decide presentar ambas acciones, esto implicaría una renuncia tácita del obrero a que su reclamación laboral propiamente se tramite bajo la Ley 2. En definitiva, si el obrero interesa acogerse al procedimiento sumario, tendrá que optar por no presentar su acción laboral en daños y perjuicios, ante la posibilidad de ver postergado el pago de los salarios o beneficios a los que pueda tener derecho en virtud del trámite ordinario por el cual se encausará la acción en daños.

La interpretación que hace la mayoría del alcance de Berríos limita sustancialmente los derechos del obrero, sobretodo tomando en consideración que, por lo general, los hechos en los cuales se fundamentan las acciones en reclamación de salarios son de fácil comprobación por parte del patrono, razón por la cual no se justifica que dichas reclamaciones se tramiten por la vía ordinaria. Véase Sierra v. Tribunal Superior, 81 D.P.R. 554 (1959).[12] Promover la economía procesal es encomiable y necesario, pero en aras de ésta no debemos lesionar los derechos legítimos de las partes en el litigio. Esto es especialmente importante en casos bajo la Ley 2, cuyo trámite sumario persigue proveer al obrero "unos medios económicos para la subsistencia de éste y su familia en la etapa de transición entre empleos." Rivera v. Insular Wire Products Corp., supra, pág. 923.

---

[12] En este caso, al considerar la procedencia del uso de interrogatorios por parte del patrono para descubrir prueba, tomamos en consideración el hecho de que "los demandados en esos casos tenían en sus propios récords toda la información requerida de los obreros, o podían adquirirla fácilmente mediante una investigación adecuada de un pequeño número de empleados." Sierra v. Tribunal Superior, 81 D.P.R. 554, 563.

Particularmente en casos como el de autos, no tiene justificación de clase alguna el que se tramite la reclamación laboral propiamente por la vía ordinaria. Aquí, los hechos en que se fundamenta la acción de discrimen son independientes de las reclamaciones de índole laboral propiamente hechas por los empleados querellantes. En este caso, si se prueba que los empleados querellantes efectivamente trabajaron durante el periodo de tomar alimentos, y que cumplían con los requisitos para aumentos de sueldo de acuerdo al principio de retribución uniforme, éstos tendrán derecho a recibir las sumas adeudadas, independientemente de que se pruebe o no que existió el discrimen por ideas políticas que ellos alegan les causó sufrimientos y angustias compensables.[13]

Además, nada impide que en estos casos, luego de una determinación inicial de separar las causas de acción, unas bajo la Ley 2 y otras por la vía ordinaria, el tribunal se convenza durante el trámite, y de acuerdo a las alegaciones de las partes, que los mejores intereses de la justicia justifican que la totalidad de la acción se lleve por la vía ordinaria o por la vía sumaria, y emita una orden a estos efectos. Lo que no debe ocurrir es que el tribunal haga una determinación automática de que la reclamación laboral propiamente deberá tramitarse por la vía ordinaria porque una acción laboral en daños y perjuicios al amparo de otras leyes laborales sea parte de dicha reclamación.

El procedimiento que sigan los tribunales al tramitar este tipo de acciones debe ser flexible, tomando en consideración tanto los propósitos de la legislación laboral como la necesidad de que ambas partes tengan un juicio justo con la debida protección a sus intereses. Para determinar si

---

[13] Es necesario señalar aquí que a la luz de lo recientemente resuelto por este Tribunal en Díaz Fontánez v. Wyndham Hotel Corporation, res. el 23 de octubre de 2001, en acciones por despido injustificado y discriminatorio bajo la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. § 185 et seq, y la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. § 146 et seq, en razón del orden en que se presenta la prueba, es conveniente que al menos en principio, toda la reclamación se tramite mediante un solo procedimiento. Este procedimiento ha de ser necesariamente el de la Ley 2, ya que para las acciones bajo la Ley 80 sólo está disponible el procedimiento sumario. Rivera v. Insular Wire Products, supra, pág. 927. Sin embargo, no existe impedimento alguno para que el tribunal, si es que

una reclamación laboral que incluya un acción de daños y perjuicios debe o no tramitarse por la vía ordinaria, los tribunales deberán considerar si de las alegaciones surge que la acción laboral en daños es una de naturaleza compleja; si las reclamaciones (de índole laboral propiamente y la de daños) se basan en hechos o prueba distintos; o si los hechos en que se basa cada reclamación, aunque relacionados, no necesariamente dependen unos de otros para la correcta adjudicación de las respectivas controversias.

Los tribunales pueden tomar en consideración éstos y otros factores, dependiendo de las circunstancias particulares de cada caso, y siempre teniendo en cuenta los mejores intereses de la justicia, con especial énfasis en el interés público de proteger al obrero y de que se cumpla con la norma procesal de que los trámites judiciales deben realizarse de forma justa, rápida y económica.[14]

De acuerdo a la exposición que antecede, consideramos que la decisión del Tribunal de Circuito, ordenando la tramitación de la reclamación de salarios mediante el trámite sumario contemplado en la Ley 2, y la acción laboral en daños por discrimen político mediante la vía ordinaria, es jurídica y procesalmente correcta. Las causas de acción en este caso deben separarse tal y como concluyó el foro recurrido.

La conclusión de que la reclamación laboral propiamente debe tramitarse mediante el procedimiento sumario hace necesario atender varias controversias subyacentes en el caso, es decir, las alegaciones de que a los empleados querellantes no les aplica la Ley 2, ni la Ley 379, y si, tal como alegan los peticionarios, la Ley de Retribución Uniforme no le es de aplicación a la AMA. Estas determinaciones son decisivas en el caso, toda vez que si el procedimiento de la Ley 2 no es oponible a los querellados, o las reclamaciones de índole laboral propiamente no proceden, no hay razón por la cual ordenar el trámite sumario. Además, es principio rector de nuestro ordenamiento que "los tribunales concederán lo que proceda en

_____

determina que efectivamente hubo un despido injustificado bajo la Ley 80, decida tramitar la acción de discrimen por la vía ordinaria.
[14]    Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

derecho, no lo que se les solicita". Marín v. Fastening Systems, Inc., 142 D.P.R. 499, 513 (1997).

III
*Disponibilidad de los beneficios de la Ley 2 para los empleados querellantes*

A.

Los querellados alegaron que los empleados querellantes no podían acogerse al procedimiento sumario establecido en la Ley 2, por ser éstos "ejecutivos y/o administradores". No les asiste la razón.

La sección 2 de la Ley 2 define los términos "obrero" y "empleado" de la manera siguiente:

> La palabra "obrero" comprenderá todo trabajador manual, de cualquier sexo y a aquellas personas naturales que estuvieren empleados en servicios u ocupaciones domésticas, y la palabra "empleado", que se usa en su acepción más amplia, comprenderá, entre otros, a toda clase de artesano, empleado o dependiente de comercio o industria. 32 L.P.R.A. § 3119.

Este Tribunal interpretó la disposición citada de en Piñero v. A.A.A., supra, a la pág. 215 disponiendo que:

> [Dado] que el alcance de la Ley Núm. 2 ha sido extendido estatutariamente para abarcar diversas reclamaciones de índole obrero patronal, no tan solo reclamaciones de salarios; que la definición de empleado provista en la misma no excluye expresamente de sus disposiciones a los administradores, ejecutivos ni a los profesionales y que dispone, además, que dicho término se utilizará **en su acepción más amplia**, concluimos que éste incluye a los ejecutivos. Abona a nuestra conclusión el hecho de que la Ley Núm. 2, supra, es una de carácter reparador y, por lo tanto, debe interpretarse liberalmente. (Énfasis en el original).

**Como vemos, hemos interpretado el término "empleado" de manera abarcadora para determinar precisamente cuáles empleados están cubiertos bajo la Ley 2. Así, debemos concluir que, en este caso, los querellantes sí pueden acogerse al procedimiento sumario establecido en la Ley 2, aunque se determinase que, como gerenciales de la AMA, se pueden clasificar como "ejecutivos", "administradores" o "profesionales", ya que dicha clasificación no es incompatible de con los beneficios que ofrece la referida ley.**

B.

Por otra parte, los querellados Héctor R. Rivera, Santos M. Delgado, Alfredo Lugo y Fernando Pérez alegaron en la contestación a la querella que no eran patrono de los querellantes, por lo cual no les era de aplicación el procedimiento sumario de la Ley 2. Este planteamiento hay que examinarlo cuidadosamente a la luz de las reclamaciones específicas de los empleados querellantes.

La Ley 2 ofrece un procedimiento expedito para que los empleados reclamen derechos y beneficios **de su patrono**, o cualquier compensación por trabajo realizado **para el patrono**. 32 L.P.R.A. § 3118. Al examinar las disposiciones de esta ley encontramos que, aunque la misma define los conceptos "obrero" y "empleado", no define el término "patrono".

Sin embargo, la falta de dicha definición no es una deficiencia en la Ley, sino más bien una precaución debido a la naturaleza y propósitos de ésta. La Ley 2 es un estatuto "estrictamente de procedimiento... para delimitar su ámbito de aplicación hay que recurrir a las leyes especiales que establecen el derecho sustantivo de los empleados..." Piñero v. A.A.A., supra, pág. 214. Por consiguiente, una vez el empleado se acoge a los beneficios de la Ley 2, el factor decisivo para determinar si dicho procedimiento es oponible **a un querellado en particular es la naturaleza del derecho sustantivo reclamado mediante el trámite sumario, o sea, la disposición legal en controversia**. Así pues, y en lo que aquí nos ocupa, bajo la Ley 2 "patrono" será aquella persona que está autorizada o llamada en ley para conceder el remedio de índole laboral que el empleado querellante está solicitando a través del procedimiento sumario.

Al examinar la Ley 379 y la Ley de Retribución Uniforme vemos que éstas conceden remedios que conciernen estrictamente salarios alegadamente dejados de percibir por los empleados reclamantes. Por tanto, en cuanto a estas reclamaciones es la AMA, como autoridad nominadora, la única querellada con autoridad para conceder los derechos reclamados por los empleados. Los querellantes no pueden reclamar dichos beneficios de los demás querellados personalmente, porque éstos simplemente no tienen

autoridad en ley para concederlos.  En consecuencia debemos concluir que en lo que respecta a estas reclamaciones, los querellados Héctor R. Rivera, Santos M. Delgado, Alfredo Lugo y Fernando Pérez no son patrono, y por tanto, tampoco están sujetos al trámite bajo la Ley 2.

Ahora bien, la situación es distinta cuando se trata de estatutos laborales que prohíben el discrimen en el empleo.  En Rosario v. Dist. Kikuet, Inc., res. el 29 de junio de 2000, 151 D.P.R._____(2000), 2000 TSPR 107, 2000 JTS 118, este Tribunal resolvió expresamente que la definición de "patrono" en las leyes que prohíben el discrimen en el empleo[15] incluye, no solamente a la autoridad nominadora propiamente dicha, sino también a los supervisores, oficiales, administradores y agentes del patrono que hayan incurrido específicamente en la conducta discriminatoria prohibida por estas leyes.  Por consiguiente, en los casos en que la causa de acción por discrimen se tramite bajo el procedimiento sumario de la Ley 2, todos los querellados que se puedan clasificar bajo la amplia definición de patrono aplicable a estos estatutos estarán sujetos al trámite sumario.

**En el caso de marras, existe una reclamación por discrimen político bajo la Ley 100.  El remedio sustantivo que provee esta ley está disponible contra cualquier querellado que se pueda clasificar dentro del concepto "patrono" aplicable a las leyes laborales anti discrimen.  Dada la aparente naturaleza de las funciones de los aquí querellados en la AMA, todos ellos son patrono bajo la Ley 100, y por consiguiente, de haberse ventilado la causa de acción por discrimen bajo el procedimiento de la Ley 2, todos los querellados hubiesen estado sujetos a cumplir con los términos y condiciones del trámite sumario.**

Atendidos estos extremos, es necesario determinar si las leyes bajo las cuales los querellantes han reclamado derechos, o sea, la Ley 379 y la Ley de Retribución Uniforme, son de aplicación a este caso.

IV

Derechos de los empleados querellantes bajo la Ley 379

A.

Según se desprende de las alegaciones de la querella, los querellantes se desempeñaban como "empleados **gerenciales** de carrera" en la AMA, y reclamaron el pago por trabajo realizado durante el periodo de tomar alimentos, que según éstos, la AMA no les pagó, en violación al Art. 14 de la Ley 379, supra, 29 L.P.R.A. § 283. También alegan que se les redujo el periodo de tomar alimentos a sólo media hora. Por su parte, los querellados alegaron que los empleados querellantes no pueden reclamar derechos bajo la Ley 379, por ser éstos "ejecutivos y/o administradores".

El Art. 19 de la Ley 379 indica que a los efectos de esta ley, el concepto empleado "incluye a todo empleado, obrero, jornalero, artesano, trabajador, oficinista, dependiente de comercio, y a toda persona empleada mediante salario, sueldo, jornal, u otra forma de compensación en cualquier ocupación, establecimiento, negocio o industria...". 29 L.P.R.A § 288(1). Dicha sección establece además que no se considerará empleado a "ejecutivos, administradores ni profesionales, según éstos sean definidos por la Junta de Salario Mínimo de Puerto Rico".

El Reglamento Núm. 13 de la Junta de Salario Mínimo, en sus Artículos III, IV y V, define lo que es un "ejecutivo", "administrador" y "profesional" respectivamente, pero no dispone específicamente si un gerencial de una agencia se clasifica bajo alguna de estas categorías. Tampoco surge del expediente de este caso qué funciones específicas realizaban los empleados querellantes al momento de presentar la querella, de manera que se pueda hacer una determinación sobre si sus funciones corresponden a las de un empleado u obrero cubierto por la Ley 379, o si por el contrario, sus funciones como gerenciales se acercan más a las funciones de un "ejecutivo", "administrador" o "profesional", categorías exentas de la aplicación de la Ley 379.

---

[15] Entiéndase la Ley 100, supra, la Ley Número 17 de 22 de abril de 1988 (hostigamiento sexual en el empleo) y la Ley 69 de 6 de julio de 1985(discrimen por razón de género).

Sin embargo, la experiencia ordinaria nos hace pensar que un gerencial de una corporación pública no es un obrero común y corriente de ésta. Por lo general, los gerenciales tienen funciones que suelen estar relacionadas con la administración central de la corporación, de más envergadura que las de un empleado regular. Esta realidad, nos hace, cuanto menos, albergar dudas sobre si estos empleados gerenciales pueden efectivamente reclamar derechos bajo las disposiciones de la Ley 379.

B

No obstante, el Art. 16 sec. 16.2 del Reglamento de Personal de la Autoridad Metropolitana de Autobuses, (en adelante Reglamento de la AMA)[16] indica que **todo empleado** tendrá una (1) hora para tomar alimentos durante su jornada regular diaria, y cualquier empleado que, por una situación de emergencia, preste servicios durante dicho periodo, será compensado "acorde con la reglamentación establecida para la compensación de trabajo extraordinario". Dicho reglamento también establece que "se podrá reducir a media (1/2) hora el período de tomar alimentos en los casos apropiados".

Estas disposiciones del Reglamento de la AMA son análogas a las disposiciones de la Ley 379 bajo las cuales los querellantes-recurridos reclamaron derechos en este caso. Así, aun cuando los empleados querellantes pudieran no estar cubiertos por la Ley 379, el Reglamento de la AMA sí dispone para el disfrute del periodo de tomar alimentos y el pago de tiempo extra si el empleado trabaja durante dicho periodo. Este derecho surge del reglamento sin que parezca haber distinción alguna entre la clasificación o categorías de empleados.

Aplicación de la Ley 89 a los empleados de la AMA

A.

Por otra parte, los empleados querellantes alegaron que se les violaron sus derechos bajo la Ley de Retribución Uniforme, supra, al no concedérseles los aumentos de sueldo correspondientes a su puesto y escala salarial, en

comparación con otros empleados gerenciales de la AMA que sí recibieron aumentos de sueldo durante los siete (7) años anteriores a la presentación de la querella. Los peticionarios, por su parte, sostienen que la Ley de Retribución Uniforme no aplica a la AMA.

La Ley de Retribución Uniforme dispone que ésta: "proveerá a los empleados del servicio público **cubiertos por el Sistema de Personal**..., un tratamiento equitativo y justo en la fijación de sus sueldos y demás formas de retribución." 3 L.P.R.A. § 760a. (Énfasis nuestro). El sistema de personal al cual se refiere la disposición citada es el sistema creado mediante la Ley de Personal de Servicio Público.[17] O sea, que la Ley de Retribución Uniforme aplica a aquellos empleados que están cubiertos específicamente bajo las disposiciones de la Ley de Personal de Servicio Público.

Al examinar esta última Ley encontramos que están excluidos de su aplicación "los empleados de agencias o instrumentalidades del Gobierno que funcionen como empresas o negocios privados." 3 L.P.R.A. § 1338(3). La AMA funciona como una empresa o negocio privado, según lo establece la propia Ley de la Autoridad Metropolitana de Autobuses[18] (en adelante Ley de la AMA). Dicha ley también dispone expresamente que: "[a] los efectos de la Ley de Personal los funcionarios y empleados de la Autoridad estarán comprendidos en el Servicio Exento." 23 L.P.R.A. § 607.

Así pues, los empleados de la AMA no están cubiertos bajo la Ley de Personal de Servicio Público, y por lo tanto tampoco les es de aplicación la Ley de Retribución Uniforme, ya que ésta ley, por sus propios términos, aplica solamente a los empleados cubiertos por la Ley de Personal de Servicio Público.

B.

---

[16] Reglamento 5427 de 15 de mayo de 1996
[17] Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A § 1301 *et seq.*
[18] Ley Núm. 5 de 11 de mayo de 1959, 23 L.P.R.A. § 601 *et seq.*

No obstante, el Art. 8 del Reglamento de Personal de la AMA, secs. 8.1 a 8.8, dispone para la creación de un plan de retribución similar al contemplado en la Ley de Retribución Uniforme para el personal de servicio público. Las disposiciones del reglamento en cuanto a dicho plan de retribución no hacen distinción entre categorías de empleados, por lo que los querellantes pueden reclamar bajo dicho plan derechos comparables con los que establece la Ley de Retribución Uniforme para el personal del servicio público.[19]

Debemos aclarar que aunque los derechos de los empleados querellantes parezcan surgir del Reglamento de la AMA en lugar de surgir de la Ley 379 y la Ley de Retribución Uniforme, esto no obsta para que éstos puedan acogerse al procedimiento de la Ley 2.

En Piñero v. A.A.A., supra, págs. 214-215, establecimos lo siguiente:

El alcance de la Ley Núm. 2 se ha extendido mediante diferentes disposiciones estatutarias y enmiendas. Como resultado, **el procedimiento sumario establecido en la misma es aplicable no tan solo a reclamaciones de salarios sino a reclamaciones de cualesquiera derechos o beneficios laborales** y de cualesquiera compensaciones en caso de que un obrero o empleado hubiese sido despedido de su empleo sin justa causa. La Ley Núm. 2 está disponible, además, cuando el legislador lo haya reglamentado mediante leyes especiales. Entre las acciones que pueden ventilarse al amparo del procedimiento sumario por disposición de una ley especial se encuentran: (i) las reclamaciones por despido injustificado basadas en la Ley Núm. 80; (ii) las acciones que surgen al amparo del Art. 5a de la Ley de Compensaciones por Accidentes de Trabajo; (iii) las reclamaciones instadas al amparo de la Ley Antidiscrimen, Ley Núm. 100; (iv) las acciones que surgen en virtud de la Ley para la protección de madres obreras...

Lo anterior es demostrativo de que el ámbito de aplicación de la Ley Núm. 2 **se ha extendido para abarcar diversas reclamaciones que emanan de la relación obrero patronal.** (Énfasis suplido, citas omitidas).

Nuestros pronunciamientos en Piñero demuestran que el procedimiento establecido en la Ley 2 se puede utilizar para reclamar una amplia gama de derechos o beneficios de índole laboral. Forzoso es concluir que la Ley 2 es aplicable a reclamaciones laborales que surjan al amparo del reglamento

---

[19] En este sentido, hemos resuelto que "[a] pesar de que la Ley de Personal no aplica a los empleados de agencias del Gobierno que funcionen como empresas privadas, nada impide que éstas adopten reglamentos con disposiciones similares a las contenidas en la Ley de Personal y que

de una corporación o agencia pública o privada. Lo decisivo para invocar los beneficios de la Ley 2 es que se trate de una reclamación de índole laboral sobre cualesquiera derechos garantizados al empleado al amparo de una ley o reglamento.

V

Por último, procede que atendamos la determinación del Tribunal de Circuito de anotar la rebeldía a los querellados en su carácter personal. En cuanto a este extremo, coincidimos con la mayoría en que no procede dicha anotación de rebeldía.

**La Ley 2 establece un término de diez (10) o quince (15) días para que el patrono conteste la querella presentada por el empleado. 32 L.P.R.A. § 3120. Si la parte querellada no comparece dentro de este término, el tribunal podrá dictar sentencia en rebeldía, concediendo el remedio solicitado por la parte querellante. 32 L.P.R.A. § 3121. El término para contestar la querella no podrá extenderse a menos que el querellado solicite una prórroga** dentro del plazo original para contestar la querella. **Díaz v. Hotel Miramar Corp., supra**.

**Al analizar estas normas hemos determinado que alegaciones concluyentes y determinaciones de derecho, al igual que hechos alegados incorrectamente, no son suficientes para sostener una determinación de responsabilidad del patrono. Para poder dictar sentencia en rebeldía bajo la Ley 2 es necesario que de las alegaciones surjan hechos suficientes para justificar la concesión del remedio. Véase Hernández v. Espinosa, supra, y los casos allí citados.**

**Por otra parte, los términos y condiciones aplicables para anotar la rebeldía en el procedimiento civil ordinario son los establecidos en las Reglas de Procedimiento Civil.[20] La Regla 10.1 indica que "un demandado deberá notificar su contestación dentro de veinte (20) días de**

---

garanticen los mismos derechos a sus empleados." Piñero v. A.A.A, 98 JTS 140, pág. 217.

[20] Véase también Continental Ins. Co., v Isleta Marina, 106 D.P.R. 809 (1978).

habérsele entregado copia del emplazamiento y la demanda." Este plazo puede ser prorrogado. Procede una anotación de rebeldía cuando el demandado no cumple con el requisito... de comparecer a contestar la demanda y/o defenderse en otra forma según lo dispuesto en estas reglas.[21]

Al aplicar estas disposiciones a la AMA y a los demás querellados, encontramos que todos ellos comparecieron ante el tribunal, solicitando prórroga para contestar las alegaciones, seis (6) días después de radicada la querella, o sea dentro del término para comparecer al tribunal que establecen tanto las Reglas de Procedimiento Civil como la Ley 2. Posteriormente, y dentro del término de la prórroga que el tribunal les concedió, los querellados contestaron la querella. Así, no puede considerarse que éstos incurrieron en rebeldía.

Cabe señalar además que aun cuando los querellados comparecieron inicialmente ante el tribunal en su "carácter oficial", esto no obsta para estimar como oportuna y bien hecha su comparecencia en cuanto a las reclamaciones personales. La mera alegación de un querellado (o demandado) en el sentido de que está compareciendo en su carácter oficial no significa que esa comparecencia no es válida en cuanto a cualesquiera de las otras reclamaciones hechas en su contra en la demanda.

El carácter oficial y el carácter personal de una comparecencia ante el tribunal sólo se refiere al remedio a concederse, y propiamente, a la capacidad o autoridad del demandado para otorgarlo. Si al contestar una demanda o querella, la parte expresa que está compareciendo en su carácter oficial, pero hace alegaciones y opone defensas que pueden ser aplicables tanto a la reclamación oficial como la personal, dicha comparecencia debe estimarse bien hecha en cuanto a todas las reclamaciones hechas en la querella o demanda contra dicha parte. Después de todo, es norma ampliamente reconocida que no es el título o nombre del escrito o reclamación lo que determina su naturaleza, sino su contenido. Ramos

---

[21] José A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo II, pág. 749.

**González** v. **Félix Medina**, 121 D.P.R. 312 (1988); **Magriz** v. **Empresas Nativas**, 143 D.P.R. 63 (1997).

En este caso, los querellados, desde la primera vez que comparecieron al tribunal, aunque indicaron que lo hacían en su carácter oficial, hicieron alegaciones y levantaron defensas aplicables a las reclamaciones personales. Es por eso que la comparecencia de los querellados debe considerarse válida en cuanto a todas las reclamaciones hechas en la querella. Como ya indicáramos, los querellados comparecieron dentro de los términos que establecen tanto las Reglas de Procedimiento Civil como la Ley 2. En estas circunstancias, es forzoso concluir que ninguno de los aquí peticionarios incurrió en rebeldía. [22]

VI

En conclusión, disentimos de la Opinión Mayoritaria en aquella parte que ordena que las reclamaciones laborales bajo la Ley 89 y la Ley 379 se tramiten por la vía ordinaria. En su lugar, confirmaríamos la sentencia del Tribunal de Circuito que ordenó la separación de la acción de daños y perjuicios de la acción en reclamación de salarios, de manera que la primera se tramite por la vía ordinaria y la segunda se ventile mediante el procedimiento sumario de la Ley 2. Entendemos que dicha solución es la más justa y más acorde con las disposiciones de la Ley 2 y su jurisprudencia interpretativa.

Por otra parte, coincidimos con la mayoría en que no procede la anotación de rebeldía a los querellados, por lo que revocaríamos la sentencia del tribunal recurrido en cuanto a este extremo. Así modificada,

---

[22] La situación del Sr. Fernando Pérez merece atención especial. Éste compareció por primera vez al tribunal dentro de los 20 días que establece las Regla 10.1 de Procedimiento Civil para contestar la demanda. En dicha comparecencia, el Sr. Fernando Pérez indicó que había solicitado representación del Secretario de Justicia, por lo que el tribunal le concedió, el 13 de mayo de 1998 una prórroga de 20 días. No obstante, el Sr. Pérez no volvió a comparecer ante el tribunal hasta el 6 de julio de 1998, cuando todos los querellados contestaron la demanda en su carácter personal. Además, y como ya indicáramos, el Sr. Pérez no es parte en el recurso presentado ante nos.

devolveríamos el caso al tribunal de instancia para que continúen los procedimientos de forma compatible con lo aquí expuesto.


                              Miriam Naveira de Rodón
                              Juez Asociada